The opinion of the court was delivered by
Monroe, J.
The plaintiff, as syndic of John Ader, claims of the defendant, damages, for the alleged wrongful seizure, by judicial process, of the property of said Ader, before his insolvency, as follows, to-wit:
Loss of trade, custom, and good will, credit and profits......$1,000 00
Loss of goods.......................................... ^00 00
Attorney’s fees ........................................ 50 00
Injury to feelings...................................... 500 00
Exemplary and punitory damages........................ 430 00
Total ...................................... $2,680 00
*1810 The defendant denies liability, and, in reconvention, claims $3Y.Y5 for rent and on some other account connected with the contract of lease for the enforcement of the obligations of which the seizure complained of was made.
The facts, as we find them from the record, are as follows, to-wit:
Upon September 10, 1890, the defendant leased, by written contract, to Ader Brothers, who were merchant tailors, the office ground floor oi the building No. 413 Carondelet street in New Orleans, for the term of one year, beginning October 1st, 1896; the price agreed on being $30.00 per month, and the contract containing the stipulation that, if the lessee should fail to pay any monthly installment the whole amount called for by the lease should be considered due. In March, 189 Y, John Ader, a member of the firm to which the property was thus leased, complained to the lessor that his brother was misappropriating the funds of the firm, and injuring its credit , and asked the lessor to make a seizure for the rent, which was past due, as a means of terminating the partnership — and the seizure was made, with the result that the firm was dissolved. John Ader paid the rent claimed, together with the costs of the suit, and it was then agreed that he should continue to occupy the premises agreeably to the terms of the lease with Ader Brothers, but upon the condition that he should furnish security. This security was never furnished, and the rent was not regularly paid, so that by September 3, 189Y, there was an unpaid balance of $5.00 upon the rent for June, and $30.00 for July, from which it followed, according to the terms of the lease, that the rent for August and September was also due and exigible, making a total of $95.00. About that time, that is to say, about September 1st, in the course of some conversation upon the subject of payment, Ader suggested that the defendant should order a suit of clothes, which he offered to make very cheap, and the defendant not only adopted the suggestion, but induced Mr. Lansing, his book-keeper, and Mr. Lansing’s son, each, to order a suit; the price of the suit ordered by the latter to be $25.00, and of the other two suits $52.00, or a total of $YY.00. There was also some negotiation concerning the renewal of the lease, which the defendant was willing to agree to, provided Ader would give security; but this he refused to do. The defendant thereupon caused a rent notice to be put up, as he was authorized to do by the current lease, but it was torn down, and was replaced, and Ader seems to have evinced a disposition to give trouble *1811 by refusing either to give security for the renewal of the lease, or to consent to vacate the premises at its expiration. Towards the middle of the month, therefore, the defendant took legal advice, and his attorneys, calling upon Mr. Ader, were informed by him in specific language that “he was busted;” that he “was not worth a cent,” and that he “intended to give Mr. Shepard all the trouble he could.” They, thereupon, wrote him a letter, of date September 13th, to the following effect, to-wit “I hereby notify you to deliver to me the premises, No. 413 Carondelet street, on the morning of the 1st of October, 1897, as' I desire our relations of landlord and tenant to cease on that day. I further notify you that I desire that you shall pay your rent, now due, on or before Thursday, the 16th of September, 1897, or on or before that day you are to deliver to me the equivalent clothes that have been ordered from you. Failing to do this, you will consider this a notice to put you in default for the amount of rent duo and owing, and now amounting to $65.00, up to the 1st of September, 1897.” One of the suits of clothes, that which had been ordered for the son of defendant’s book-keeper, was delivered, but the others were not, and no rent was paid. ITence, upon September 23rd, by the advice of his counsel, the defendant filed suit in the First Oity Court, claiming $70.00 as the balance of rent due, after deducting from the $95.00, as heretofore stated, the sum of $25.00, being the price of the suit of clothes which had been delivered. A writ of provisional seizure was issued in connection with this suit, and a deputy constable was placed in charge of the establishment. He did not, however, require Ader to leave, nor did he disturb his effects, or prevent him from receiving his customers; and a few days later, on September 28th, Ader procured the release of the seizure by giving bond. Upon the trial' of the suit in the City Court, there was judgment for Shepard, but, upon, appeal to the District Court, the judgment was reversed, and the entire demand was rejected, although it appears that, in the course of the trial, Ader tendered the owner two suits of clothes, the price of which was $52.00, and $18.00, in cash, as representing the amount of rent claimed, and admitted by him to be due. The judgment rendered was evidently the result of a misapprehension, arising, perhaps, from the manner in which the case was presented, as neither Shepard nor his counsel were placed on the stand. However that may be, and notwithstanding the judgment thus rendered, the two suits of clothes tendered by Ader were actually delivered, but the $18.00 was not *1812 delivered, and still remains unpaid. In the meanwhile, Mr. Ader, adhering to his purpose to give trouble, held possession of the premises until some days after the 1st of October, so that Shepard was obliged to allow $18.00, as the half month’s rent, to the incoming tenant, and was, therefore, made to lose that additional amount.
After Ader had finally moved, and established himself in new quarters, a seizure of his stock was made, within a fortnight, as a result of which he sued the constable and his surety, and also his own surety, on the bond which had been given for the release of the said stock from Shepard’s seizure. The suit, thus brought, found its way to this court, where the amount of damages allowed was increased from $800.00 to $600.00, and the following language, explanatory of the situation and of the conclusion reached, was used, to-wit:
“In a suit for rent, the plaintiff’s property was seized and the seizure was released on a forthcoming bond, signed by one of the defendants as surety; from the judgment against him in the magistrate’s court, plaintiff appealed, and the judgment of the lower court was reversed. Before that reversal', the plaintiff addressed his surety a note expressing thanks to him, and stating, in effect, that the appeal would not be prosecuted, but the property which had been 'seized and released on the forthcoming bond would be surrendered to settle the landlord’s claim. The surety, anxious to be released of liability on the bond, carried the note to the constable who had executed the writ of provisional seizure, but had, later, released the property on the forthcoming bond, and, at the instance of the surety, the constable, without any writ in his hands, proceeded to plaintiff’s store, and took possession of its contents, clothes, and tools and implements of plaintiff’s occupation, a merchant tailor. The testimony fixes the cost of this property at $600. It was taken by the constable, against the plaintiff’s earnest protest, and is still in possession of the constable.”
“The plaintiff’s petition sets forth the action of the surety and constable, charges malice of the defendants, that their action was wholly illegal and violent, to the great injury of the plaintiff in his business and reputation, and, besides actual damages, claims punitory damages of the surety the constable and his official bondsman, made defendants.”
****** *
“In connection with the alleged injury to plaintiff’s business and credit, we must give due consideration to his financial embarrassment *1813 resulting, as we gather from the record, in his cession to his creditors. * * * We are not inclined to give damages out of proportion to the actual injury of plaintiff and beyond the amount appropriate to mark the judicial condemnation of wrongful conduct, the basis of the present suit. Under all the circumstances, we think it proper to award the plaintiff $600.00, with the right reserved to the defendant to credit for the present value of plaintiff’s property taken by the constable.” The judgment thus rendered, it is admitted, has been paid in full, and, by reference to the statement 'at the beginning of this opinion, it will be seen that the plaintiff is here claiming $700.00, as the value of the same goods for which he was thus paid; and $1,000.00, as damages to the same business and credit for which damages were thus denied.
It is plain that he is not entitled to recover the value of the same goods twice, and more particularly is he not entitled to recover their value in this case, since the goods were delivered to him, uninjured, upon the execution of the forthcoming boind and were, thereafter, seized at the instance of the surety on that bond.
As to the alleged damages to his business and credit; there is much less reason for allowing them in this case than in the other, since the seizure made by the defendant lasted but a few days, the goods were not removed, the store was not closed, the plaintiff was not prevented from receiving, and transacting business with, his customers, and he had previously stated that “he was not worth a cent;” from which it may fairly be inferred that he had little in the way of credit to lose.
The claim for damages by reason of the injury to the plaintiff’s feelings, and for exemplary damages, is entitled to very little consideration. Only a few months before, the plaintiff had induced his laudlord to make a seizure in order to get rid of his partner in business. Thereafter, he was very irregular in his payments, and there was probably never a time when the defendant could not, with perfect propriety and safety, have seized for his rent. Towards the close of the term, and in order to help the plaintiff out, the defendant gave him an order for clothes, and induced others to do likewise, and was willing to credit the entire price upon the rent account, but the plaintiff seems to have been entirely unappreciative, and, for no other reason than that the defendant wanted to make some satisfactory arrangement about leasing the property for the ensuing year, decided to give him trouble, and so announced, virtually informing the counsel of whom the defendant took *1814 advice and whose advice he followed, that he had nothing at stake, and that they could do as they ixleased.
The judgment appealed from allowed $50.00 as fees of the attorneys by whom the writ of provisional seizure, issued at the instance of the defendant, was set aside, and, upon the other hand, allowed the defendant $22.75, on his reconventional demand, being, as we understand it, $18.00 balance of rent due, and $4.75 as the cost of replacing'a window which the plaintiff had been allowed to remove on condition that he would restore it to position at the expiration of the lease. With respect to this latter item, it has not been suggested that there is any error in the judgment. As to the claim for the $18.00, the counsel for the plaintiff contends that it was included in the rent suit, and is concluded by the judgment rejecting the demand in that suit, and the first impression is that this view of the matter is correct. Further consideration leads, however, to the conclusion that it is not correct, and ought not to be sustained. The suit for rent was brought during the month of September, and the rent for that month could only have been considered due upon the assumption that it had become constructively due under the stipulation of the lease whereby the whole amount was to be exigible in the event of default with respect to any one of the installments. The theory upon which the case was decided, it is plain, was that Shepard, upon the 15th of September, had accepted his tenant’s obligation to make three suits of clothes as an equivalent for the rent then due, that the tenant was not in default with respect to said obligation when the suit was thereafter instituted before? the expiration of the month, and hence that there was, at that time, nothing due him, and his demand was accordingly rejected. This view of the matter is sustained by the fact, which is not denied, that the two suits of clothes, which had not previously been delivered, were tendered in the course of the trial, and went into the possession of the plaintiff in the case, whilst the $18.00 in cash, has never reached him, for the reason, no doubt, that, upon the theory upon which the judgment was rendered, it was not then due. This, however, did not prevent its falling due after the institution of the suit, and, as it has never been paid, ought not to prevent its recovery now.
The judgment appealed from is, therefore, affirmed.